**UNITED STATES of America,**
**Appellee,**

v.

**Omaira RIOS–GONZALEZ, Defendant-Appellant.**

**No. 193, Docket 35078.**

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 1971.

Decided Nov. 5, 1971.

**1214**

Phylis Skloot Bamberger, New York City, Robert Kasanof, The Legal Aid Society, New York City, for defendant-appellant.

David G. Trager, Asst. U. S. Atty., Brooklyn (Robert A. Morse, U. S. Atty., E.D.N.Y., and Emanuel A. Moore, Asst. U. S. Atty., Brooklyn, of counsel), for appellee.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

The appellant, Omaira Rios-Gonzalez, was found guilty by a jury of attempting to evade the Immigration Laws by impersonating Margarita Arango without disclosing her true identity in violation of 18 U.S.C. § 1546 and of importing and smuggling approximately seven pounds of marihuana into the United States in violation of 21 U.S.C. § 176a. She was sentenced to concurrent terms of one year for violating 18 U.S.C. § 1546 and five years for violating 21 U.S.C. § 176a.

The sole issue on this appeal is whether the appellant's conviction pursuant to

former [1] section 176a of Title 21 violated her privilege against self incrimination. No appeal was taken from the judgment convicting appellant of violating the Immigration Laws.

### The Facts

On March 18, 1970, the appellant entered the United States at John F. Kennedy Airport after a flight from Colombia, South America. Her passport, visa, airline ticket, and baggage declaration identified her as Margarita Arango de Toro.

A routine examination of the appellant's luggage by a customs inspector indicated that the lids of her suitcase were suspiciously thick. She was therefore taken to a private room where a search by the inspector and a supervisor disclosed about five pounds of marihuana hidden between the lids and a false bottom. The appellant was then placed under arrest. After being advised of her rights, she claimed that the suitcase was given to her by someone who was to meet her in New York and that she did not know it contained marihuana. She admitted, however, that the address on the baggage declaration was false.

The following day the appellant was questioned by officials of the United States Immigration Service. At that time she disclosed that her true name was Omaira Rios-Gonzalez.

The appellant testified in her own defense. She claimed that an acquaintance named Ramon had made all the arrangements for her trip to the United States and that he was to meet her at the airport. It was also claimed that the suitcase which contained the marihuana was borrowed from a friend of Ramon after she loaned her own suitcase to Ramon.

On cross-examination the appellant stated that she did not know Ramon's last name or his whereabouts. She also stated that the money used to purchase the airline ticket was won in a lottery.

### The Constitutionality of § 176a.

Former section 176a provided, in pertinent part that

"whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana *which should have been invoiced* * * * shall be imprisoned not less than five * * * years * * *." (emphasis added)

At issue is the meaning of the emphasized phrase.

The appellant contends that she could not comply with the requirement that the marihuana be invoiced without providing the Government with a substantial link in the chain of evidence showing her to be guilty of violating other criminal statutes. Since this dilemma works to deprive her of the Fifth Amendment privilege against self-incrimination, she concludes that her conviction must be reversed. We disagree.

The appellant's argument is defective in at least two respects. First, the statutory phrase "which should have been invoiced" is not an essential element of the crime proscribed by section 176a.

In the case of Thomas v. United States, 314 F.2d 936, cert. denied, 375 U.S. 849, 84 S.Ct. 105, 11 L.Ed.2d 76 (1968), the Court of Appeals for the Fifth Circuit was asked to consider the phrase here in question. The Court stated that

"the smuggling of marihuana is unlawful *per se*. No additional element of the offense of smuggling marihuana exists by virtue of the phrase 'which should have been invoiced'. In our opinion, the word 'invoiced', as used therein, carries the meaning attached to it in the customs law, viz., lawfully entered or declared." *Thomas, supra* at 938.

The phrase, therefore, is merely descriptive and indicates the type of mari-

---

[1]. 21 U.S.C. § 176a was repealed by the Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1291; Pub.L.No. 91–153, Title III, § 1101(a) (2) (October 27, 1970).

huana about which the statute is concerned. This interpretation of the statute has been consistently followed by every court that has been asked to construe the phrase. Witt v. United States, 413 F.2d 303, 305 n. 1 (9th Cir.), cert. denied, 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230 (1969); Ortiz v. United States, 329 F.2d 381 (5th Cir. 1964). We find no reason for reaching a contrary result.

In this respect it is worth noting that the appellant was not indicted for failing to invoice the marihuana. Rather, the indictment alleged, in pertinent part, that Omaira Rios-Gonzalez

" * * * did knowingly and unlawfully import and smuggle into the United States contrary to law a quantity of approximately seven (7) pounds of marihuana."

Since the appellant's failure to invoice the marihuana bore no relationship to the crime of which she was convicted, it cannot be claimed that her privilege against self-incrimination was violated by placing the appellant in an unconstitutional dilemma. The appellant's argument can therefore be dismissed on this basis alone. However, we also note that the appellant's argument is defective in another respect.

■ Assuming, arguendo, that the failure to invoice was an essential element of the crime, we find that the statutory scheme, of which 21 U.S.C. § 176a was a part, clearly distinguishable from those involved in the cases cited by the appellant wherein the Supreme Court found that particular statutes violated a defendant's privilege against self-incrimination. Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923

(1968). A brief outline of the statutory scheme here in question will serve to substantiate this conclusion.

The Government is required by considerations of public health, safety and fiscal policy to know what articles are being brought into the country. United States v. 532.33 Carats, More or Less, of Cut and Polished Diamonds, 137 F.Supp. 527, 529 (D.C.Mass.1955). To insure that this information is available, the Secretary of the Treasury is authorized to prescribe rules and regulations governing the importation of any article. See, e. g., 19 U.S.C. §§ 66, 1624.

Pursuant to the authority vested in him by 19 U.S.C. § 1498, the Secretary has prescribed the following rule:

"*All* articles brought into the United States by *any* individual shall be declared to a customs officer." (emphasis added 19 C.F.R. § 10.19(a).)

The rule goes on to state that the declaration may, under certain circumstances be oral. In all other cases, the declaration must be written. 19 C.F.R. § 10.19(b) and (c). There are no exceptions to the provisions of the rule. The underlying policy considerations require a "rigid adherence" to the provisions of disclosure. *532.33 Carats, supra* at 527.

To enforce the requirement that all articles be declared, the Government relies on a series of penal and non-penal sanctions. See, e. g., 18 U.S.C. § 545 and 19 U.S.C. § 1497, respectively. Former section 176a was merely one of the statutes which provided a penal sanction for failing to declare articles being brought into the country.

In light of the above, it is apparent that former section 176a, unlike any of the statutes involved in the cases cited by the appellant, was part of an essentially regulatory scheme which, of necessity, relied upon self-reporting as the only viable means of securing the required information.[2] The strong governmental policies underlying the need for disclo-

---

2. *See, e. g.,* Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722 (1968); and *compare,* United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356

(1971); *Cf.* California v. Byers, 402 U.S. 424, 431, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971).

sure and the nature of the disclosures sought show that the statutory scheme was not designed to circumvent an individual's rights and privileges as regards the criminal process.[3] Moreover, the requirement that all articles be declared and the necessity of such a declaration shows that the appellant, and those in a similar position, were not singled out as a select group "inherently suspect of criminal activities." Albertson v. SACB, 382 U.S. 70, 78, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965).[4] Under these circumstances, former section 176a of Title 21 was not unconstitutional.

For the foregoing reasons we conclude that even if the failure to invoice was an element of the appellant's crime, the presence of that element did not deprive her of the privilege against self-incrimination.[5]

The judgment of conviction is affirmed.

3. *Cf.*, California v. Byers, *supra* at 453, 91 S.Ct. 1535 (Harlan, J., concurring) and *compare*, Marchetti v. United States, 390 U.S. 39, 57, 88 S.Ct. 697 (1968); Grosso v. United States, 390 U.S. 62, 68, 88 S.Ct. 709 (1968).

4. *See, Leary, supra,* 395 U.S. at 18, 89 S.Ct. 1532; *Marchetti, supra,* 390 U.S. at 57, 88 S.Ct. 697; *Grosso, supra,* 390 U.S. at 64, 88 S.Ct. 709; *Haynes, supra,* 390 U.S. at 98–99, 88 S.Ct. 722.

5. *Cf.*, United States v. Johnson, 439 F.2d 885 (5th Cir. 1971); Witt v. United States, *supra.*